.GULOTTA, Judge.
This is an appeal from a judgment dismissing plaintiff’s suit in redhibition for rescission of the sale and return of the purchase price of a new 1970 Pontiac Le- *827 mans automobile purchased from defendant. Plaintiff also seeks damages in addition to rescission. At the outset, we deem it advisable to make disposition of a motion for dismissal of the appeal filed herein on behalf of General Motors.
In this connection, plaintiff filed the original petition in this suit against the dealer, Paretti Pontiac Company, Incorporated, for rescission and defendant filed a third-party demand against the manufacturer, General Motors Corporation. Plaintiff thereafter filed a separate proceeding against General Motors for rescission of the sale of the same car. General Motors excepted and answered averring that it did not sell the automobile to plaintiff, that no redhibitory vices existed and that it did not breach any warranty unto plaintiff. The two suits were consolidated for trial. The trial judge dismissed plaintiff’s suit against Paretti, as well as the third-party demand against General Motors, and also plaintiff’s suit against General Motors. Paretti did not appeal the dismissal of its third-party demand, and plaintiff did not appeal the judgment dismissing General Motors. Plaintiff now argues that his appeal in one of two consolidated cases constitutes an appeal in both cases. We do not agree. The court ordered the cases consolidated for trial pursuant to LSA-C.C.P. art. 1561, but separate judgments were rendered and separate appeals must be perfected. Accordingly, the motion to dismiss plaintiff’s appeal insofar as it is directed against General Motors is granted. General Motors is not a party to this appeal and is not before us.
In dismissing plaintiff’s action, the trial judge concluded that the defects in the automobile of which plaintiff complains were minor, repairable and did not render the auto so imperfect that it could not be used for the purpose intended.
The issue before us is whether the defects of which plaintiff complains are such as to support an action in redhibition.
The facts are that plaintiff and his wife purchased the car from defendant on or about July 3, 1970, through its salesman, Terry Sarrazin. When Prince and his wife returned to accept delivery the following day after the car was serviced by defendant, Prince noticed a small scratch on the trunk. Sarrazin stated that within one to three weeks later plaintiff called him about work to be done on the car, and he told plaintiff to bring the car in and Paretti would take care of servicing it. Sarrazin indicated that he had received no complaints from plaintiff and thought plaintiff was to come in only for the car to be serviced.
On July 21, 1970, Prince and his wife drove into the driveway at Paretti, parked, blocked the entrance and removed the keys. He admitted that he intentionally parked the car across the driveway and that he had not returned to the dealership subsequent to delivery of the car until the above incident. At this time, he presented a list of 13 items or complaints with the car.[1] Discussion with Joseph Marrero, service manager of Paretti, was unsatisfactory, according to Marrero, because of the anger and uncooperative attitude of the plaintiff. *828 Marrero testified that plaintiff threw the list toward the floor and toward Marrero, then grabbed the door and “stormed out of the office”. He then proceeded to Joe Paretti’s office and handed him a letter with the same list of items attached. According to plaintiff, he and his wife then went to the car and drove away.
It was plaintiff’s contention that he returned to Paretti Pontiac in order to get his money back for the car and to return the car. However, plaintiff made contradictory statements in this regard, and his actions indicated he desired repairs on this occasion. Furthermore, he did not leave the car with defendant. Instead, he made complaints to the National Customers Relations Department of Pontiac Motors, Office of the General Manager, about his car and the treatment Paretti Pontiac gave him.
In response and as a result of a call from James B. Nichols, Area Parts and Service Manager of Pontiac Motor Division, plaintiff and his wife met with Nichols at Paretti on July 27, 1970, to discuss the difficulties. At this time, Nichols advised plaintiff the warranty would cover the problems. However, according to Nichols, the car was not left for service because of plaintiff’s choice not to do so and not because of Paretti’s indication that it would not correct the problems.
Nichols again contacted plaintiff through Mrs. Prince to arrange to meet at a different dealership, i. e., Pattison Pontiac, to help resolve the problems. On August 6, 1970, plaintiff and his wife met with Nichols, Jay D. Smith, also a representative of Pontiac Motor Division and Carl May-eaux who was Service Manager at Patti-son. Nichols road tested the car and let plaintiff point out all items of concern. After a discussion of some of the problems involving the transmission and the speedometer, according to Nichols, it was understood plaintiff would return to Pattison for all corrections to be made the following Monday. Obviously, this was the intent of the parties in view of a letter plaintiff mailed that same day to R. B. Young,[2] the Supervisor of Customer Relations of Pontiac Motor Division. Plaintiff again did not return the automobile for repairs, irrespective of the agreement. Nichols made other efforts to contact plaintiff on August 18 and 19 and talked to his wife, but plaintiff did not return the calls.
Plaintiff’s arbitrary and uncooperative behavior is further reflected by his correspondence with Jerrold Wagner, Customers Relations Manager, Pontiac Motor Division. A letter dated August 20, 1970, from Wagner to plaintiff stated plaintiff had failed to make his car available to Nichols on August 17 as agreed, and Nichols had even offered to tow the car in for plaintiff if it was inoperable. The letter further stated:
“ * * * We fully intend to make any and all corrections as agreed upon by you and Mrs. Prince in your meeting with Mr. Nichols on August 6, 1970. Naturally, it is imperative that the vehicle be made available to accomplish this end.”
Subsequent communications between Prince and Wagner show Pattison’s willingness to get the automobile and to repair it.
Prince further admitted that he did not give Paretti or any agency an opportunity to properly inspect and repair the car. He told of his failure to bring in the car despite his agreement with Nichols. The basic disagreement according to plaintiff was the nature and extent of the transmission problem.
Appellant seeks to invoke the application of the article of the Civil Code on redhibition.
*829 LSA-C.C. art. 2520 states:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
The burden of proof in cases of red-hibition rests upon the buyer to establish the defect and that such vice rendered the thing useless or its use so inconvenient and imperfect that it must be supposed he would not have purchased the goods had he known of its vices. See: Charter Company v. Mercante Floor Covering, 186 So.2d 430 (La.App. 1st Cir. 1966); Hanna Investments, Inc. v. Stovall, 171 So.2d 678 (La.App. 2nd Cir. 1965); Gabriel v. Jeansonne, 162 So.2d 798 (La.App. 4th Cir. 1964).
It is our opinion that plaintiff failed to prove an action in redhibition. Plaintiff’s witnesses indicated that the problems were “minor” and easily repaired. Raymond Williams, body shop manager with Royal Oldsmobile for five years, inspected plaintiff’s car and acknowledged transmission trouble and difficulty with “low” and “reverse” gears. He testified that when he examined plaintiff’s car for him on August 20, 1970, there were 6,383.6 miles on the odometer (hardly proof of a tiseless vehicle) and that the vinyl top needed to be glued at the rear. He indicated the noises were normal and that the problems were minor—ordinary wear and tear—that required minor adjustment. Carl Harris, auto mechanic, acknowledged the transmission was irregular in that it would go into gear but would not move. He couldn’t tell what was wrong; however, he said the problems were small ones any new car has.
Because the record shows that the complaints are of a minor nature and are correctable, we do not imply that an accumulation of numerous or several minor complaints could not serve the requirements of LSA-C.C. art. 2520 if those complaints made the thing sold absolutely useless or so inconvenient and imperfect that the buyer would not have purchased it. However, this is not the situation here.
Despite plaintiff’s allegation that the speedometer and/or odometer were erratic, we are convinced, as was the trial judge, that plaintiff traveled several thousand miles in the vehicle. We note that plaintiff’s work required long distance travel, and apparently the automobile was driven extensively. There was some damage to the front and rear of the car from other causes at time of trial, thus indicating subsequent use of the same car plaintiff had told Nichols and others in August, 1970, was “unsafe” for the road.
While an action in redhibition is not applicable herein, plaintiff might conceivably be entitled to relief in quanti mi-noris provided the burden of proof required in such cases is satisfied. This court in Leson Chevrolet Company v. Barbier, 173 So.2d 50, 52 (La.App. 4th Cir. 1965) said:
“ * * * under our settled jurisprudence a buyer’s continued use of a purchased article after he discovers its defective condition bars an avoidance of the sale for redhibition and relegates such a buyer to a reduction of the purchase price. Abraham v. Dalworth Machinery Company, La.App., 167 So.2d 185 and cases cited therein. The burden of establishing the amount of any reduction to which he is entitled is upon the buyer. See Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691; Papa v. Louisiana Metal Awning Company, La.App., 131 So.2d 114; Loeb v. Nielson, La.App., 128 So.2d 447.” (emphasis ours)
And the Court of Appeal, Second Circuit (1961) in Papa v. Louisiana Metal Awning Company, 131 So.2d 114, 117 stated:
“In order to justify a decree of quanti minoris, whether predicated upon Arti *830 cles 2520 and 2543 or Article 2769, one must establish not only the existence of the defects of which complained, but also the amount of the reduction to which he is entitled, i. e., the expenditures necessary to correct the defects. Coco v. Mack Motor Truck Corp., supra; Ehrlich v. Roby Motors Co., 1928, 166 La. 557, 117 So. 590; Loeb v. Neilson, La.App. 4th Cir., 1961, 128 So.2d 447; Lillis v. Anderson, La.App. Orleans, 1945, 21 So.2d 389; Reimann Construction Company v. Upton, La.App.Orleans, 1938, 178 So. 528. * * * ” (emphasis ours)
We are convinced that plaintiff’s car did have defects; however, the record indicates these problems were minor and could be repaired. Appellant rejected the numerous and repeated good faith attempts of Paretti, Pattison, and Pontiac’s Division Representatives to correct the defects at no cost to plaintiff. He afforded defendant no opportunity to repair the car. Moreover, he did not seek to have repairs made nor incur any expenditures to correct the complaints. We are convinced he suffered no loss in this regard; therefore, a decree in quanti minoris could not be justified.
While the issue of a waiver of implied warranties was argued by Paretti, the conclusions reached herein obviate the necessity of considering this question.
We are of the opinion that the trial judge properly dismissed plaintiff’s suit. The judgment is affirmed.
Affirmed.
LEMMON, J., concurs.

. The list was as follows :
“1. Loud clanking noise in left front bumper. Sounds libe[s] shocks.
2. Large scratch on trunk.
3. Flow of heat comming (sic) from under rear seat while air conditioner is on. The heat is also outside the car.
4. Rubber on rim of trunk is out of line and makes the trunk hard to close.
5. Paint needs touch up on dash.
6. Flashers don’t work.
7. Speedometer doesn’t register right.
8. No light in ash tray or in glove compartment.
9.Air vent on right middle hard to open or close (A/C Vent)
10. Hub cap center section keeps falling off (Left Rear)
11. Idle needs adjustment. The car uses too much gas.
12. Rear Parking Light is out.
13. Radio has static.”
In addition, he complained of no reverse gear, a flow of heat under the dash, vinyl top leaks, transmission fluid leaks, water pump leaks and chrome missing.

. The letter acknowledged Young’s prompt reply and said that Pontiac’s representative, Jim Nichols, worked with i>laintiff and that he and plaintiff set a date to have the car repaired at another Pontiac dealership. Plaintiff, however, still complained of the way Paretti’s employees had conducted themselves on his July 21 visit.