**GULF SOUTH MACHINE, INC.,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**KEARNEY & TRECKER CORPORA-TION, Defendant-Appellant,**
**Cross-Appellee.**

**No. 82–3766.**

United States Court of Appeals,
Fifth Circuit.

April 1, 1985.

---

Many, Lococo & Kimble, M. Hepburn Many, New Orleans, La., Young & White, Malcolm D. Young, Omaha, Neb., for defendant-appellant, cross-appellee.

Lemle, Kelleher, Kohlmeyer & Matthews, Wm. S. Penick, New Orleans, La., for plaintiff-appellee, cross-appellant.

Before GEE, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

In this diversity jurisdiction case, Kearney & Trecker Corporation (K & T) appeal a jury verdict awarding Gulf South Machine, Inc. (GSM) the sum of $398,577 in an action in redhibition. Finding no evidentiary support for an award of $14,757 for expense reimbursement, we vacate that portion of the judgment and affirm the judgment as so modified.

## Facts

GSM, owned by the brothers Larry, Stan, and Mike Holak, operates a machine shop in Ponchatoula, Louisiana, making metal components for *inter alia*, the oil industry. K & T is a Milwaukee, Wisconsin manufacturer of computerized machines designed for the machining of metal components.

At a 1978 Chicago International Machine Tool Show, Larry Holak was impressed by a large computerized Milwaukee-Matic 180 Machinery Center (MM–180) manufactured by K & T. Holak approached James Halbert of the Oliver H. Van Horn Company, K & T's authorized dealer in Louisiana, to explore the possibility of purchasing one of the units. At Holak's request, Halbert sent GSM a written proposal describing the MM–180 and listing prices for the basic machine and various accessories. The proposal contained other terms of sale such as shipping requirements and taxes. After receiving Halbert's proposal, GSM submitted to Oliver H. Van Horn Company a purchase order for an MM–180 and selected accessories. In addition to listing the machine and accessories, the purchase order contained shipping and payment terms.

Upon receipt of the purchase order, K & T sent an acknowledgment form to GSM. The front of the form contained a statement that it was an acceptance only upon the terms and conditions listed on the reverse side. The back of the form contained a disclaimer of all implied warranties. The evidence indicates that the Holak brothers simply filed the acknowledgment with their purchase order and were not made aware of the warranty clause until they consulted an attorney preparatory to filing the instant suit.

The MM–180 was installed at GSM in January of 1980. GSM immediately experienced substantial, continuous difficulties. The equipment malfunctioned the very first time it was energized and was "down" for two weeks. This was a harbinger of things to come. In the first 18 months the MM–180 was out of service approximately one-third of the time. During the first 10 months K & T servicemen replaced 258 defective parts. In September 1980, after the machine had been inoperable for three weeks, GSM asked K & T for a replacement. K & T refused. GSM had paid the full purchase price within two months of installation, but when it declined to pay a repair bill in November 1980, K & T terminated all further service although two months remained on the one-year warranty. GSM sued for rescission of the sale or for *quanti minoris*, reduction of the purchase price, together with damages because of redhibitory defects in the MM–180.

After an eight-day trial, the jury returned a special verdict finding that the MM–180 was defective in its manufacture, design, or construction rendering it either absolutely useless or making its use so inconvenient and imperfect that GSM would not have purchased it had it known of the defects. The jury also found that the waiver of warranty clause on the back of the acknowledgment form was not brought to the attention of GSM or explained to it; that GSM did not misuse the product; and that GSM was entitled to $153,820 in refund of the purchase price, repayment for $14,757 of expenses incurred, $30,000 in attorneys' fees, and $200,000 in other damages. The district court entered judgment for $398,577 after denying the defendant's motion for judgment n.o.v. or new trial.

## The Disclaimer of Warranties

K & T argues and the district court found that GSM's purchase order was an offer and K & T's acknowledgment form was an acceptance. Based upon this finding, K & T argues that the disclaimer of warranties on the back of the form was a term of the contract since GSM did not object to it within 15 days in accordance with the terms of the form. K & T then argues that the contract should be enforced in accordance with its terms and GSM should be found to have waived the implied warranty against redhibitory defects. Unless waived, that warranty applies to every Louisiana sales contract. GSM, on the oth-

er hand, argues that the waiver on the reverse side of the acknowledgment form was not a term of the contract because K & T's proposal through the Oliver H. Van Horn Company was the offer and GSM's purchase order was the acceptance creating the contract of sale. Thus, GSM argues, the acknowledgment form was extraneous to the contract of sale.

Under Louisiana law, a price list sent upon request to a customer constitutes an offer and the contract of sale is completed when the customer accepts the offer by placing an order for goods in accordance with the price list. As the Louisiana intermediate appellate court stated in *North Louisiana Milk, Etc. v. Southland Corp.*, 352 So.2d 293, 296 (2d Cir.La.App. 1977), *citing* Litvinoff, *Obligations*, 6 La. Civil Law Treatise § 130, pp. 211–213 (1969):

> [W]hen a merchant, on request, sends a price list to a customer who orders goods in accordance with the price list, there is a contract formed between them for the price and upon conditions mentioned in the price list.

From the foregoing, it is apparent that the district court erroneously characterized GSM's proposal as an offer. But even if that characterization had been correct, K & T's acknowledgment form would not qualify as an acceptance because it did not match the terms of the offer and could be nothing more than a counterproposal. Litvinoff, *Obligations*, 6 La.Civil Law Treatise § 186, p. 338 (1969). The disclaimer of implied warranties provision of the acknowledgment markedly differed from the codical warranty against redhibitory defects which was implied in GSM's purchase order.

Louisiana law mandates that a disclaimer of the warranty against redhibitory defects must be express. *Stevens v. Daigle and Hinson Rambler, Inc.*, 153 So.2d 511 (La.App.1963), reminds that the Civil Code-based rights to redhibition can be abrogated only by "an express waiver or modification of the warranty by agreement between the vendor and vendee." Ex parte actions by the vendor are insufficient, for as that court noted "the vendor by any act on his part alone may not modify the warranty implied in all sales in Louisiana but such warranty can only be changed or modified by express agreement of both parties." *Id.* at 514. There is no evidence that GSM expressly agreed to a waiver of the implied warranties impressed on all sales by the Civil Code. The mere receipt and filing of the acknowledgment form is not enough.

To suffice as a waiver of the warranty against redhibitory defects, the purported waiver (1) must be clear and unambiguous, (2) must be contained in the sale documents, and (3) must be brought to the purchaser's attention. *Prince v. Paretti Pontiac Co., Inc.*, 281 So.2d 112 (La.1973); *Anderson v. Bohn Ford, Inc.*, 291 So.2d 786 (La.App.1973). K & T argues that in cases between a business buyer and a business seller the third part of the test should be read to require only that the disclaimer be conspicuous. It further argues that the line in capital letters on the bottom front of the acknowledgment form stating, "(SEE CONDITIONS OF ACCEPTANCE ON BACK HEREOF)" made the fine print warranty disclaimer on the back of the form sufficiently conspicuous to meet the third prong of the *Prince* test. This argument is not supported by Louisiana law.

The Uniform Commercial Code cases cited by K & T are inapplicable. Louisiana law on redhibition is not the same as the correlative U.C.C. provisions and is the principle obstacle to Louisiana's adoption of Article 2 of the U.C.C. Mashaw, "A Sketch of the Consequences for Louisiana Law of the Adoption of Article II: Sales of the Uniform Commercial Code," 42 Tul.L.Rev. 740 (1968). While K & T is correct in its statement that the safeguards which protect non-business consumers are more stringent than those protecting businessmen, a waiver of the warranty against redhibitory defects is nevertheless scrutinized very carefully to make sure that the third prong of the test is

satisfied even where the buyer is a businessman.

Since the Louisiana Supreme Court decision in *Prince* in 1973, there have been only four reported cases in which the waiver has been found to be effective: *Louisiana Nat. Leasing Corp. v. ADF Serv.*, 377 So.2d 92 (La.1979); *Capital City Leasing Corp. v. Hill*, 394 So.2d 1264 (La.App. 1981); *FMC Corp. v. Continental Grain Co.*, 355 So.2d 953 (La.App.1977); *Anderson v. Bohn Ford, Inc.*, 291 So.2d 786 (La.App.1973). In each case, the document containing the waiver was signed by the buyer, and in two of the cases, the agreement was examined by lawyers prior to execution. In each case, the court emphasized the signature and/or the examination by legal counsel before signing. In four other cases, the Louisiana courts have refused to find that the third prong of the test was met despite the fact that the business buyer signed the waiver. *Linch Intern. Trucks, Inc. v. Pierre*, 434 So.2d 1225 (La.App.1983); *Tuttle v. Lowrey Chevrolet, Inc.*, 424 So.2d 1258 (La.App.1982); *Equilease Corporation v. Hill*, 290 So.2d 423 (La.App.1974); *Harris v. Automatic Enterprises of Louisiana, Inc.*, 145 So.2d 335 (La.App.1962). The jury's finding that the waiver clause was not brought to the specific attention of GSM and that GSM did not waive the implied warranty of redhibition is in lock-step with Louisiana law.

### Evidentiary Rulings

■ K & T objected to the introduction of a logbook reportedly recording malfunctions of the MM–180 simultaneously with the occurrence of each problem. The district court admitted the logbook under Fed. R.Evid. 803(6) which authorizes evidentiary use of business records made at or near the time of the occurrence by or from information transmitted by a person with knowledge of the event if the record was kept as a regular practice in a regularly conducted business. The record shows that GSM kept logbooks of problems for most if not all of its machines and that the keeping of logbooks on machines was a regular prac-

tice even before the MM–180 was acquired. The entries were made by the operators of the machine immediately after the malfunction occurred or within 24 hours of the difficulty, tracking handwritten notes which the operator made at the time. The trial court did not abuse its discretion in admitting the logbook. *See United States v. Vela*, 673 F.2d 86 (5th Cir.1982).

K & T also argues that the trial court erroneously admitted expert testimony, over its objection of lack of foundation, about the damage sustained by GSM as a consequence of losing a customer, Gulfco. K & T maintains that there was a lack of direct testimony linking the loss of the customer's business to the defects in the MM–180. While the record contains no direct evidence as to the reason for the loss of Gulfco's business, there is sufficient evidence from which the jury reasonably could infer that consequence. The evidence reflects that there was only one other machine in the shop capable of the work done by the MM–180 and that machine was booked solid with the work for other customers. The record also indicates that orders which required the use of the MM–180 were rarely finished on time because of the frequent down-time; that GSM lost Gulfco's business during the period when MM–180 was most inoperable; and that GSM had lost part of another customer's work at the same time because the breakdown of the MM–180 prevented timely completion of work orders. The record contains a sufficient basis for the trial court to overrule K & T's objection.

### Jury Instructions

■ The jury charge did not contain an instruction on credit for use. K & T now objects to its absence. K & T did not request that charge; the subject merely arose in the charge conference in connection with K & T's request for an instruction that the jury could, under the doctrine of *quanti minoris*, award a reduction in the purchase price rather than a return of the full price. After much discussion, the trial court included the requested reduction

charge. K & T raised no further objections. Defendant's failure to specifically object to the lack of a credit-for-use charge, prevents our consideration of this claim of error. The injunction of Fed.R.Civ.P. 51 is express. "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ Rule 51 also disposes of the other objection to the jury charge. K & T contends that the court should not have instructed the jury that lost profits could be an element of damages because no competent evidence on lost profits was offered. At the charge conference, K & T objected to that charge on the ground that it was not supported by the law; there was no contention advanced that the charge was not supported by the evidence. Since K & T did not then state this basis for its objection, it cannot now be heard to so argue.

### Jury Award for Expenses Incurred

■ GSM was billed $14,757 by K & T for parts and service on the MM–180 but the bill was never paid. Despite this, the jury awarded GSM $14,757 for these expenses. While the $14,757 in charges would have been a proper item of damages if paid by GSM, it was not appropriate in the present setting. GSM is not entitled to reimbursement for expenses which it did not pay. Likewise, K & T is not entitled to payment of these charges, now or in the future. The jury award for these expenses is vacated.

### Attorney's Fees

■ The jury awarded GSM $30,000 for attorney's fees which K & T challenges as unsupported by the evidence. This claim is without merit. The record contains copies of bills showing charges to GSM of $25,957 for services rendered up to the week before trial. In addition to pretrial work, GSM's attorney represented it through eight days of trial. The evidence is sufficient to support an award of $30,000 in attorney's fees.

### Attorney's Fees on Appeal

 GSM cross-appeals for additional attorney's fees on appeal. Such an award is not appropriate and the cross-appeal is denied.

### Conclusion

We modify the judgment to delete the allowance of the expense recovery of $14,757, and as so modified, affirm.

MODIFIED and AFFIRMED.

ATTORNEY'S FEES DENIED.