688 So.2d 1103 (1996)
Michael G. PIAS, Plaintiff-Appellee,
v.
Randy E. WIGGINS, Defendant-Appellant.
No. 96-499.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Writ Denied January 10, 1997.
*1104 Albin Alexandre Provosty, Monique F. Rauls, Alexandria, for Michael G. Pias.
Michael D. Hislop, Alexandria, for Randy E. Wiggins.
Before SAUNDERS, PETERS and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a redhibition suit for diminution of the purchase price of a 1988 Cadillac Sedan Deville. The trial court rendered judgment in favor of the plaintiff-purchaser, Michael Pias, and against the defendant-seller, Randy Wiggins, for $3,238.19. This amount represented Pias' total repair costs incurred within six weeks of the sale, $3,488.19, less $250.00 paid by Wiggins to Pias during the week following the sale for the partial cost of replacing the automobile's intake gaskets.
In his reasons for judgment, the trial judge determined that the Cadillac had a non-apparent redhibitory defect at the time of the sale which resulted in Pias having to replace the engine. The trial court also concluded that, had Pias known of the defect, he would not have purchased the automobile. Additionally, the trial court found that Pias did not waive the implied warranty that the automobile is free from hidden defects and is fit for its intended use. Finally, the trial court denied Wiggins' reconventional demand against Pias and his wife, Deborah Pias, for defamation and damage to his reputation.
On appeal, Wiggins maintains that the trial court erred in the following respects:
(1) Ruling that Pias did not effectively waive the implied warranty against redhibitory defects and
(2) Denying Wiggins' reconventional claim for defamation prior to Wiggins' attempt to present evidence thereon.
For the reasons which follow, we conclude that the trial court did not err in finding that Pias did not waive the implied warranty. However, the trial court did err by not allowing Wiggins to present evidence on his defamation claim and denying this claim before Wiggins attempted to present such evidence. Therefore, we remand this case to the trial court for a hearing on the merits of Wiggins' reconventional demand.

FACTS
Wiggins, a State Farm Insurance agent, sold the automobile in question to Pias for $6,900.00 on November 23, 1993. While being driven by its original owner, the automobile was involved in a rear-end collision, necessitating the replacement of the entire rear section of the car's body. Wiggins divulged this to Pias. Before the sale took place, Wiggins allowed Pias and his wife to take the car and drive it for one day and to take it to a mechanic. Pias took the car to Earnest Kelly, a mechanic at Turpin Pontiac, who visually inspected the car and found it to be in good condition.
The parties signed a written bill of sale, and Pias gave Wiggins a check for $6,900.00. The bill of sale contains no express waiver of the implied warranty. After the sale was consummated, Wiggins informed Pias that *1105 the automobile's title was in the physical possession of the lienholder and that it would take a few weeks for the title to be sent to him. Pias agreed to this arrangement.
Two days after the sale, Pias checked the engine's oil and discovered that it contained water. Kelly examined the engine and determined that the intake gaskets were leaking.
Two days later, while cleaning the car, Deborah Pias discovered the car's registration lodged in the passenger seat springs. She was surprised to discover that the car was registered as a "reconstructed vehicle." On the following Monday, November 29, 1993, Pias returned to Wiggins' office and demanded the return of his money in exchange for return of the car. Wiggins declined to rescind the sale, but he offered to pay up to $250.00 toward the intake gasket replacement. Pias agreed to this offer. Kelly performed the repair at a cost of $381.19.
The car ran well for a few days following this repair until Pias noticed the smell of antifreeze and detected a radiator leak. He removed the radiator and brought it to Kelly, who determined the radiator was clogged with an excessive amount of "stopleak." Pias then took the radiator to Bayou Radiator Shop. The repair shop replaced a side tank and repaired the stopped-up radiator for $72.54.
Soon after this repair, the car's engine "knocked" when it was being driven. Pias consulted Kelly, who told him that driving the car under these conditions would probably help the pistons regain their "prime" after losing their efficiency due to the oil/water mix.
On December 21, 1993, Pias received the title from Wiggins and a $250.00 check for the intake gasket replacement. Wiggins refused to pay anything toward the intervening radiator repair. When he returned home from Wiggins' office, Pias received a call from his wife, who was visiting her parents in Baton Rouge. She informed him that the car had overheated. Pias went to Baton Rouge to retrieve the car and his family. When they returned to Alexandria, Deborah Pias called Wiggins and threatened to write a complaint letter to the editor of the Alexandria Daily Town Talk newspaper. She also told him that, unless he agreed to rescind the sale, she would contact "higher-ups" in State Farm to put pressure on him to rescind the sale.
Pias brought the car to Turpin Pontiac, where Kelly determined that it needed a new engine. Kelly also told Pias that it appeared the engine had been "doctored" for sale. Kelly replaced the engine on January 4, 1994, at a cost to Pias of $3,107.70.
At trial, Kelly testified as an expert in automotive engines. He opined that excessive use of "stop-leak" in the radiator over an extended period of time caused the engine failure. He stated that the normal usage amount is one ounce and that he found at least two cups, or approximately sixteen ounces, of "stop-leak" in the cooling system. He also stated that the engine had been "doctored" for the car to temporarily run well.
Both Pias and Wiggins testified by deposition and at trial. Pias testified that Wiggins did not represent to him that the sale was being made without warranty. Wiggins testified conversely that he made it clear to Pias that the car was sold "as is," without the implied warranty. Wiggins related that he told Pias that a used car is like a man that is healthy one day and has a heart attack the next day. He denied ever purchasing or using "stop-leak" in the car.
During the final moments of trial, Wiggins began to testify on what the State Farm personnel had told him concerning the Piases' communication with them. Pias' attorney objected to the hearsay nature of this testimony. The trial court, without ruling on the objection, concluded sua sponte that Wiggins had not been defamed, stating:
[Y]ou lose on defamation. Obviously, this man [Wiggins] has not been held up to ridicule by the community because he was just elected [as state representative].
R. p. 260.
At the close of the testimony, the trial judge then explained that he would take the matter under advisement. He requested *1106 that the parties file post-trial memoranda on the effect of an oral waiver of warranty.

WARRANTY WAIVER
Wiggins assails the trial court's determination that Pias did not waive the implied warranties of fitness for the intended use and that the car was free of redhibitory defects. In brief, Wiggins concentrates on what he describes as the jurisprudentially imposed requirement that such a waiver be in writing. He urges that such a requirement is not found in the Civil Code. We note that the trial court, without specifically finding that the waiver need be written, held that Pias did not effectively waive the warranty.
In analyzing this issue, we must apply the law applicable before the recent revision of the Sales articles, which became effective on January 1, 1995. In that regard, the following former Civil Code articles are pertinent:
La.Civ.Code art. 2474
The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him.
La.Civ.Code art. 2475
The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells.
La.Civ.Code art. 2476
The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices.
These warranties apply to all sales transactions. Wiggins correctly points out that these code articles did not require that the waiver be in writing. However, this state's jurisprudence, beginning with Hendricks v. Horseless Carriage, Inc., 332 So.2d 892 (La.App. 2 Cir.1976) (in reliance upon Prince v. Paretti Pontiac Co., Inc., 281 So.2d 112 (La.1973) and other cases cited therein), has uniformly held that, in order for a waiver to be effective, the following three elements must be present:
(1) The waiver must be written in clear and unambiguous terms;
(2) The waiver must be contained in the sale and chattel mortgage document; and
(3) The waiver must either be brought to the attention of the buyer or explained to him.
See also Chaudoir v. Porsche Cars of N. Am., 95-729 (La.App. 3 Cir. 12/6/95), 667 So.2d 569, writ denied, 96-0800 (La.5/31/96), 673 So.2d 1033; Savannah v. Anthony's Auto Sales, Inc., 618 So.2d 676 (La.App. 2 Cir.), writ denied, 626 So.2d 1174 (La.1993); Reilly v. Gene Ducote Volkswagen, Inc., 549 So.2d 428 (La.App. 5 Cir.1989); Thibodeaux v. Meaux's Auto Sales, Inc., 364 So.2d 1370 (La.App. 3 Cir.1978).
The seller has the burden of proving that the buyer waived the warranties. A trial court's determination that these warranties either were or were not effectively waived is a question of fact that will not be disturbed on appeal absent manifest error. Chaudoir, 667 So.2d 569.
After reviewing the entire record, we conclude that the trial court did not err in finding Wiggins did not carry his burden of proving that Pias effectively waived the warranties. The testimony of the opposing parties on this issue conflicted at trial. Wiggins' use of the "healthy man/heart attack" analogy did not constitute clear notice that the car was being sold without warranty. Additionally, no evidence besides Wiggins' own testimony substantiates Wiggins' position that the waiver was brought to Pias' attention or explained to him. Pias' testimony contradicts Wiggins' version of the events. The waiver was certainly not included in the bill of sale. Applying the jurisprudential rule that any such waiver must be written and included in the sale document, we find that Wiggins did not prove these two elements necessary to a valid and effective waiver. Additionally, it is doubtful that Wiggins explained to Pias the effect of the waiver with sufficient clarity and specificity. Even if, as Wiggins argues, the Civil Code did not require the waiver to be written, the alleged oral waiver in this case was clearly insufficient to be effective against Pias. Pursuant to La.Civ.Code art. 2474, we are bound to *1107 construe this "obscure [and] ambiguous" waiver against the seller, Wiggins.

DEFAMATION
On the issue of Wiggins' defamation claim, we find that the trial judge erred in not allowing Wiggins the opportunity to present evidence on this claim. Although the trial judge has great discretion in controlling the order of trial, he likewise is required to allow a party who asserts a cause of action to present evidence pertinent to his cause of action at trial before denying and dismissing the claim. We remand this case to the trial court for a hearing to allow Wiggins a fair opportunity to present evidence on his reconventional demand for defamation.

DECREE
For these reasons, we reverse the trial court's dismissal of defendant's defamation claim and remand for a new trial on this specific issue. In all other respects, we affirm the trial court's judgment.
Costs of this appeal are split equally between plaintiff, Michael Pias, and defendant, Randy Wiggins.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.