96 So.2d 109 (1957)
Prince JONES
v.
James Stewart MORGAN et al.
No. 4439.
Court of Appeal of Louisiana, First Circuit.
June 28, 1957.
Fournet & Adams, Lafayette, Jos. A. Nicolosi, Plaquemine, for appellant.
Dupont & Dupont, Borron, Owen, Borron & Delahaye, Plaquemine, for appellee.
LOTTINGER, Judge.
This is a tort action wherein the plaintiff, Prince Jones, seeks judgment against the defendants, James Stewart Morgan, Fred Clay Morgan, Chester Hubert Morgan, Eugene A. Morgan, Babin and Crusta Flying Service, Incorporated, and General Accident Fire and Life Assurance Corporation in the sum of $556.45 for the loss of six acres of cotton planted by the plaintiff in the year 1953 and allegedly destroyed by the chemical 2-4D when sprayed from an airplane by defendant Babin and Crusta Flying Service, Incorporated to control weeds on a nearby rice farm belonging to the Morgan defendants. The remaining defendant, General Accident Fire and Life Assurance Corporation, is the liability insurer of the Morgans.
The matter was consolidated for trial in the Court below with case No. 6262 of said Court wherein the plaintiff Eddie Jackson seeks from the same defendants the amount of $936.55 for nine acres of cotton alleged to have been similarly destroyed.
The General Accident Fire and Life Assurance Corporation filed exceptions of no right and no cause of action predicated upon an "Aircraft exclusion clause" contained in the policy issued the Morgans by it, which exceptions were sustained. Following trial on the merits judgments were rendered in favor of each plaintiff against the Morgans and Babin and Crusta Flying Service, Incorporated, as prayed for and the matter is now before us on an appeal taken by these defendants.
The trial judge rendered written reasons for judgment as follows:
"During the year 1953 plaintiffs Jones and Jackson planted 5.6 and 9 acres of cotton respectively. Jones' field is situated some 300 feet east or southeast of the Morgan property whereas Jackson's field lies approximately 1000 feet southeast of the Morgan lands.

*110 "Sometime during the summer of 1953 the Morgans employed defendants Babin and Crusta, operators of a flying service, to spray their rice fields first with 2-4D to kill weeds and subsequently with fertilizer both the chemical 2-4D and the fertilizer being applied by means of an airplane specially equipped for such purposes. In applying these substances the pilot flew just above the top of the growing crop most of the time at a height of only a few feet above the ground and released the chemical 2-4D in the form of a spray which settled upon the crop being treated.
"The date of the alleged 2-4D spraying is seriously disputed it being alleged in defendants' answer that this spraying occurred August 7 and 8, 1953, whereas the testimony of the witnesses assigns various other dates to this incident such as July 7 and 8, July 8 and July 10, 1953. Defendants in their answer initially denied the spraying with 2-4D caused damage to plaintiffs' crops but in their brief counsel for defendants admit the crops were damaged by the chemical 2-4D but again deny it was the spraying done by them which caused the loss of the crops.
"It is established beyond doubt that the crops in question were adversely affected by the harmful chemical 2-4D. Mr. E. A. Epps a graduate chemist and long time employee of the State Department of Agriculture testified that he examined the crops of both plaintiffs on or about September 10, 1953 and found unmistakable signs of 2-4D damage in that the leaves had become narrow, elongated, crinkled and ruffled around the edges and in addition the squares and flowers were deformed. According to this witness such effects are characteristic of the injury done to cotton by the chemical 2-4D.
"Regarding the date of the 2-4D spraying the evidence is both voluminous and conflicting. In Paragraph 16 of their original answer defendants alleged that the controversial spraying occurred on August 7 and 8, 1953, and in answer to interrogatories propounded prior to trial defendants testified that said spraying occurred on August 7 and 8, 1953. The trial of this cause consumed more than one day and on the morning of the second trial day defendants filed an amended answer wherein they alleged that the 2-4D spraying occurred on July 7 and 8, 1953. The Court first permitted the amended answer to be filed but, upon attention being called by counsel for plaintiffs to the fact that the amended answer changed a material fact during the course of the trial, subsequently concluded that to allow such a material change in the allegations at that stage of the trial would be an abuse of judicial discretion and thereupon revoked and rescinded the order permitting filing of the amended answer.
"Counsel for defendants introduced in evidence certain checks allegedly given in payment for the spraying. These checks indicate that the spraying was done July 7 and 8, 1953, from which defendants argue that there could be no possible connection between their spraying and crop damage which did not become manifest until mid August.
"Plaintiffs frankly admit that they have no knowledge as to the exact dates of the spraying, their testimony being to the effect that they noticed the plane operating on two consecutive days in the late summer of 1953. Plaintiffs and other witnesses called by plaintiffs testified that the spray caused an odor resembling that of creosote to permeate the atmosphere to a noticeable degree. One or two witnesses further testified further that the odor of the chemical was of sufficient strength to induce dizziness and nausea.

*111 "Daniel F. Babin, member of the defendant firm of Crusta and Babin, testified that he personally flew the plane in question and that on the days in question the wind was blowing from the north or northeast (northwest) at velocities estimated by him to have been from 2 to 6 miles per hour. Babin further testified that he had to suspend operations one day because, in his opinion, the wind rose to a velocity that he considered dangerous to surrounding fields. See Transcript Page 13. We believe this portion of Babin's testimony most significant inasmuch as it confirms the testimony of plaintiffs and other witnesses to the effect that the prevailing northeasterly (northwesterly) winds caused the spray to drift over their respective properties in quantities sufficient to nauseate persons exposed thereto.
"We believe no useful purpose would be served by attempting to explain or reconcile the voluminous testimony regarding the dates of the 2-4D spraying. It seems that 2-4D damage to cotton usually manifests itself within 10 to 14 days of exposure to the chemical but there is nothing in the record to indicate that such damage invariably becomes noticeable within said period. We do not deem it absolutely necessary that plaintiffs prove the exact date of the spraying which caused the damage, it being sufficient that plaintiffs merely prove, by a fair preponderance of the evidence, that the spraying conducted by defendants did in fact cause the damage of which plaintiffs now complain.
"It appears from the record that on August 5, 1953, one LeBlanc of the Iberville Parish A. S. C. office, inspected plaintiffs' crops for the purpose of measuring same and on said date found the crops in good condition. Defendants seized upon this fact to argue that since the spraying was done on July 7 and 8, and the crops were still in good condition on August 5, the only conclusion possible is that plaintiffs themselves damaged their own crops subsequent to August 5, 1953. Such an assumption is totally without foundation in the record considering that there is no evidence whatsoever to show that plaintiffs used 2-4D during the year 1953 nor is there any evidence of record to even remotely explain why plaintiffs would have deliberately destroyed crops in good condition on August 5, 1953, which date is near normal harvest commencement.
"We believe that if the 2-4D spraying occurred July 7 and 8, 1953, plaintiffs are mistaken as to the length of time in which the effects of the spraying became noticeable. The incident in question occurred in July or August 1953 and the matter did not come to trial until some two and one-half years later. Considering the elapsed time between the incident and trial it is not beyond the realm of reasonable probability that plaintiffs could not correlate the time element as precisely as they may have done had this case come to trial shortly after the incident complained of.
"The record establishes beyond doubt that the damage to plaintiffs' crops was caused by the chemical 2-4D; that the only 2-4D spraying done in proximity to plaintiffs' properties was done by defendants; that subsequent to the spraying by defendants the plaintiffs complained to defendant J. S. Morgan who first refused to view the crops but who, finally, after repeated requests by plaintiffs did look at the condition of the fields involved, and that as a result of the 2-4D damage both crops were practically a total loss.
"It is elementary that in a civil proceeding plaintiff need not prove his cause beyond doubt but only by a fair preponderance of the evidence. Considering the circumstances hereinabove *112 enumerated we have no hesitancy in holding that plaintiffs have proved their respective claims by a fair preponderance of the evidence as required by law and should prevail herein.
"With respect to the alleged negligence on the part of defendants the evidence shows that 2-4D is particularly harmful to broad leaf plants such as cotton and, except in large concentrations, is practically harmless to grasses and narrow leaf plants. Regulations promulgated by the Louisiana Department of Agriculture in conformity with Act 502 of the Regular Session of 1952 [LSA-R.S. 3:1621], relative to the use of 2-4D and other herbicides provides that the minimum spray distance from plants susceptible to 2-4D damage shall be one mile downwind when wind velocity is 4 to 6 miles per hour. The testimony of the witness Babin shows that at times the wind reached a velocity of six miles per hour and that it eventually rose to such velocity that he deemed it advisable to discontinue operations temporarily. Babin further stated that in making his turns upon reaching the extremities of the rice fields his plane sometimes drifted over plaintiffs' properties and although he testified that he shut off the spray mechanism before commencing his turns it is quite probable that with the wind coming from the direction indicated some of the chemical was blown over plaintiffs' properties in the course of the numerous turns made by Babin. We believe that Babin's own testimony shows him to be guilty of negligence in performing the operation despite the prevailing wind considering he was within 300 feet of one and 1000 feet of another field containing crops highly susceptible to damage from the particular chemical being used.
"Having established the negligence of defendant Babin and Crusta Flying Service Incorporated such negligence is attributable to the Morgans, and renders said defendants liable in solido to each plaintiff herein.
"There remains but to assess the amount of damages due each plaintiff. The evidence shows that plaintiff Jones planted the same fields during the years 1951, 1952 and 1953. In 1951 and 1952 Jones planted five acres of cotton and achieved a 3 bale yield each of these years. In 1951 Jackson planted 6.5 acres which yielded 5 bales of lint plus 1240 pounds of lint and seed and in 1952 he produced 4 bales of cotton on 8.8 acres. In 1953 Jones' crop produced 188 pounds of remnants which brought ten (10¢) per pound or a total of $18.80 whereas Jackson's crop yielded 222 pounds of remnants valued at $22.20.
"According to the evidence of record the state average of lint per acre for Louisiana during 1953 was 407 pounds per acre and the average price per pound for lint cotton during this same season was $.3312. It follows, therefore, that if plaintiff Jones had produced the state average for 1953 the value of the lint would have been 2279.2 x $.3312 or $754.87. Since cotton usually produces 60% seed and 40% lint the value of Jones' seed at the prevailing price of $52.80 per ton would have been $90.26 or a total crop value of $845.13. Considering that Jones received $18.80 for the remnants produced his loss on the foregoing basis would be $826.33.
"If Jackson's lands had produced the state average during 1953 he would have obtained 3663 pounds of lint valued at $1213.19 and 5494 pounds of seed valued at $52.80 per ton or $145.04 making a total crop value of $1358.23 Considering that Jackson received $22. 20 for the remnants actually produced his total loss on the foregoing basis would be $1336.03.

*113 "The production figures on both farms under consideration having equalled the state average for the two years next preceding 1953, we believe it both safe and fair to assume that 1953 yield on each would have been the equivalent of the state average for that year.
"It will be noted, however, that the losses of the respective plaintiffs, as hereinabove determined, do not take into consideration harvesting and marketing expenses which each plaintiff would have had to pay out of the gross value of their crops had the crops been actually marketed and sold. The sum of $556.45 sought by plaintiff Jones is $269.88 less than the projected gross value of his crop while the sum of $936.55 prayed for by plaintiff Jackson is $399.48 less than the projected gross value of his said crop. We believe that in each instance the differential would at least equal if not exceed harvesting and marketing expenses."
The only question presented by the appeal is simply whether the 2-4D used by the defendants is that which caused the destruction of the cotton. The trial judge saw and heard the witnesses and concluded that it did and from the record as made up, we cannot say that he thereby committed manifest error.
It will be noted that the trial judge found the witness Babin negligent in performing the operation. Such a finding is, however, not necessary in view of the recent holding of the Supreme Court in Gotreaux v. Gary, 232 La. 373, 94 So.2d 293, wherein the doctrine of strict liability was applied under facts almost identical to those presented here.
The trial judge's computation of damages is not attacked and we think it most fair and equitable.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.