LEMMON, Judge.
This is a suit on a contract whereby Louisiana National Leasing Corporation (LNL) allegedly leased a photocopy machine to ADF Services, Inc. (ADF). Defendants, ADF and the two individuals who guaranteed payment of the contract, have appealed from a judgment which awarded LNL the amount of the balance of the installments.
I
In early 1976 a salesman from Spectrum Systems, Inc. (SS) contacted ADF’s vice president with a proposal to sell ADF a photocopy machine on a cash or a lease-purchase arrangement. Since the monthly payments under the lease purchase proposal represented a savings over the amount ADF was paying monthly for the leased photocopier then in use, ADF’s officer authorized installation of the machine on a trial basis and subsequently agreed to the lease-purchase proposition.
On March 12, 1976, the date the contract between LNL and ADF was executed, LNL entered the transaction, being introduced as the financing agency for SS’s lease-purchase contracts. ADF’s officer, who is an attorney, checked the typed figures on the two-page printed contract and, after being assured the printed terms and conditions were those agreed upon earlier, signed the contract.
Contemporaneously with executing the contract with ADF, LNL purchased the machine from SS for the sum of $4,754.10. The LNL-ADF contract showed the list price as $4,485.00, the sales tax as $269.10, and the total cost as $4,754.10, and provided for 50 monthly payments of $133.35 (a total of $6,667.50). The contract was otherwise completely couched in terms of lease, providing that ownership was to remain in the lessor, that the lessee was to keep the equipment in good repair and to make all necessary repairs at its own expense, and that the lessee was to surrender the equipment at the termination of the lease. As to warranties the contract provided:
“Lessor will request the supplier to authorize Lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to Lessee or Lessor, but Lessor itself makes no express or implied warranties as to any matter whatsoever, including, without limitation, the condition of equipment, its merchantability or its fitness for any particular purpose. No defect or unfitness of the equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this lease.” (Emphasis supplied)
The machine operated properly for two or three months, but trouble started when ink rubbed off and later when the machine produced scorched copies. Finally, in October, 1976 a sheet of paper caught fire during the copying process, and when the same thing occurred on the second or third sheet to be processed after the machine had been “repaired” by SS (who had a one-year service contract as part of the agreement), ADF demanded that the machine be replaced. When SS refused, ADF tendered the machine to both SS and LNL by registered mail and discontinued payments. This suit by LNL followed.
II
LNL, in instituting this litigation, claimed the status of lessor. While ADF argues alternatively that LNL was actually a vendor and that the overall transaction constituted a prohibited sale with reservation of title (common law conditional sale), we accept for purposes of this decision that LNL was the lessor and owner of the machine.[1]
The difficulty with LNL’s position is that it wants all of the rights of a lessor, but none of the obligations.
*375 Lease is a synallagmatic or bilateral contract, by which one party is obliged to give the enjoyment of a thing, while the other is obliged to give the agreed price. C.C. art. 2669. In bilateral contracts the obligation of one party is the cause of the obligation of the other. Litvinoff, 7 Louisiana Civil Law Treatise — Obligations, Book 2, § 132 (1975). Thus, if one party fails in an obligation which is of the essence of the contract, there is no cause for an enforceable obligation on the other party.
In giving the enjoyment of the thing, the lessor guarantees against vices and defects which may prevent the thing’s being used for its intended purpose. C.C. art. 2695.[2] The obligation to give a thing free from vices and defects which render the thing unfit for its intended use is of the very essence of a contract of lease. See C.C. art. 1764. This record establishes the machine which LNL leased to ADF was defective from the inception of the lease and was not suitable for its intended use.
Nevertheless, LNL contends ADF validly waived any guaranty of freedom from vices and defects, since the contract contains a printed waiver of warranty. While such a waiver might be valid under some circumstances as a specifically bargained for provision in a lease, we conclude there was no effective waiver under the circumstances of this case. Here, the contract called for installments totaling the full $4,754.10 value of the machine plus apparent financing charges of almost $2,000.00, and the lessor simply cannot be allowed to exact a waiver of the obligation of warranting fitness and guaranteeing freedom from vices and defects while retaining the right to collect rent for the entire 50-month term, even if the machine proves defective within a short period after commencement of the lease.
LNL could have chosen to lend ADF the purchase price and accept a mortgage as security, in which ease LNL would not have enjoyed the advantages of ownership, but would not have been burdened with the disadvantage of the obligations imposed on a lessor. LNL chose instead to purchase the machine and to lease it to ADF, thereby achieving the advantages of ownership, but sought to avoid the essential obligations of a lessor by providing that the lessee was obliged to pay rent regardless of any defect or unfitness of the thing leased. Such a provision is contrary to the basic obligations which are the essence of a contract of lease, since the furnishing of the thing free from defects is the counter-performance that a lessor must render in return for the right to collect rent.
For these reasons, the judgment of the trial court is reversed, and it is ordered that plaintiff’s suit be dismissed at its cost.

REVERSED AND RENDERED.

. The only indicia of sale in the written contract was the reference to the sales price and the sales tax, but this is far from conclusive proof that the parties intended a sale. Furthermore, while ADF’s officer testified that there was a contemporaneous verbal agreement for a lease-purchase arrangement, his testimony did not fairly indicate that LNL was a party to such an agreement.

. This guarantee imposed by law on the lessor is analogous to the warranty of freedom from vices and defects imposed by C.C. art. 2476 upon the seller, breach of which gives rise to an action for redhibition under C.C. art. 2520. 2 Planiol, Treatise on the Civil Law, § 1786 (La. St.Law Inst.Trans.1959). Even if the seller attempts to contract away any warranty of fitness, redhibition is allowed if the thing was not suitable for its intended use. See, for example, McLain v. Cuccia, 259 So.2d 337 (La.App. 4th Cir. 1972).