377 So.2d 92 (1979)
LOUISIANA NATIONAL LEASING CORPORATION
v.
ADF SERVICE, INC. et al.
No. 64734.
Supreme Court of Louisiana.
November 12, 1979.
*93 Charles D. McCowan, Jr., John Dale Powers, Sanders, Downing, Kean & Cazedessus, Baton Rouge, for plaintiff-applicant.
David Paul Bains, Vosbein, Hillerin & Bains, New Orleans, for defendant-respondent.
Frank M. Adkins, Philip A. Franco, Adams & Reese, New Orleans, amicus curiae for ITT Industrial Credit Corp., Westinghouse Credit Corp., Equilease Corp., George Engine Co.
Linda K. West, New Orleans Legal Assistance Corp., New Orleans, amicus curiae for NOLAC.
J. David Forsyth, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, amicus curiae for The Bank of New Orleans & Trust Company.
MARCUS, Justice.[*]
Louisiana National Leasing Corporation (LNL) instituted this action against ADF Service, Inc. (ADF), David Vosbein and Curtis C. Rogers, Jr., to recover the balance due under a lease of a photocopy machine by LNL to ADF and guaranteed by Vosbein and Rogers. Defendants answered, reconvened and asserted a third party demand against Spectrum Systems, Inc., d/b/a Calculator & Computer Center (SS), the supplier of the photocopy machine leased by LNL to ADF. The trial court rendered judgment in favor of LNL and against ADF, Vosbein and Rogers, jointly and in solido, for the sum of $5,731.05 and a default judgment on the third party demand in favor of ADF, Vosbein and Rogers and against SS in the same amount ($5,731.05). ADF, Vosbein and Rogers appealed. The court of appeal reversed.[1] On LNL's application, we granted certiorari to review the correctness of this decision.[2]
In early 1976, a salesman from SS contacted ADF through Vosbein, an attorney and vice-president and part-owner of ADF. Vosbein's law office was located in the same building as that of ADF. The salesman represented that SS would supply a photocopy machine (Sharpfax copier) at a cost substantially less than that which ADF was then paying Xerox to rent a similar machine. The Sharpfax copier was distributed *94 and serviced by SS. After assuring itself that the machine and SS were reputable, ADF agreed to have SS place the machine in its office.
The machine was delivered and operated satisfactorily. Shortly thereafter (March 12, 1976), Rogers, president of ADF, and Vosbein met with the SS salesman and a representative of LNL in order to sign the agreement. This was the first contact that ADF had with LNL. Vosbein testified that the SS salesman introduced the LNL representative as its "financing arm."[3] Rogers and Vosbein were late for another appointment and signed the document presented to them after assuring themselves that the dollar amounts were the same as previously quoted to them by the SS salesman. They claim that they did not read the entire contract particularly the terms and conditions listed on the reverse side.
The machine operated satisfactorily for a period of about three months. Thereafter, they began to have trouble with the machine; some of the papers started to come out scorched. SS attempted to repair the machine. However, on one occasion, papers burned as they were emitted from the machine. SS again attempted to repair the machine. The repairs proved unsuccessful; the machine again emitted burning papers. Thereafter, the machine was no longer used. ADF's request to SS to replace the machine was refused. ADF then tendered the machine to both SS and LNL and refused to make further payments under the lease. The present litigation followed.
Under the terms of the agreement, LNL was to lease the Sharpfax copier to ADF for a period of fifty months. Contemporaneously with the execution of the lease, LNL purchased the machine from SS. Among the terms and conditions listed on the reverse side of the lease was the following provision which assigned LNL's vendee rights of warranty against SS to ADF, but excluded all warranties, express or implied, as between LNL, as lessor, and ADF, as lessee:
WARRANTIES Lessor will request the supplier to authorize Lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to Lessee or Lessor, but Lessor itself makes no express or implied warranties as to any matter whatsoever, including, without limitation, the condition of equipment, its merchantability or its fitness for any particular purpose. No defect or unfitness of the equipment shall relieve Lessee of the obligation to pay rent or any other obligation under this lease.
The lease also provided that ADF was to be responsible for keeping the machine in good repair and all such repairs were to be made at ADF's expense. As stated in the above quoted provision, no defect or unfitness of the equipment would relieve ADF of its obligation to pay rent under the lease. Included in the rental payments was a one-year maintenance contract offered by SS whereby SS would provide the labor and replace any defective parts.
LNL occupies the position of a lessor of a movable. La.Civil Code art. 2676. Article 2674 provides that a lease of a thing is a contract by which one party grants the enjoyment of a thing for a certain time for a stipulated price which the other party must pay. The lessor guarantees the lessee against all vices and defects which may prevent the thing from being used. Id. art. 2695. Article 1764 states that implied warranties are not essential elements of contracts, but may be waived without destroying the character or effect of the contract:
All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
. . . . .
(2) Things which, although not essential to the contract, yet are implied from *95 the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect.
Implied warranties arise by operation of law in every contract of lease. La.Civil Code arts. 2693-95. However, the lessee may as a condition of the contract of lease dispense with the implied warranties. Klein v. Young, 163 La. 59, 111 So. 495 (1927).
Legal agreements have the effect of law upon the parties and courts are bound to give legal effect to all such contracts according to the true intent of the parties. La.Civil Code art. 1945. Individuals cannot, by their conventions, derogate from the force of laws made for the preservation of public good or good morals; however, in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good. Id. art. 11.
The court of appeal held that, since the lessor's guarantee against vices and defects which may prevent the thing from being used for its intended purpose (art. 2695) is of the very essence of the contract of lease (art. 1764), the "lessor simply cannot be allowed to exact a waiver of the obligation of [warranty of] fitness ... while retaining the right to collect rent" during the entire term of the lease even if the machine should prove defective. We do not agree.
In the instant case, ADF selected the machine and supplier (SS). The machine was purchased by LNL from SS for use by ADF. LNL was simply the financial medium through which ADF was able to acquire the machine. The lease excluded all implied warranties on the part of LNL. ADF obligated itself to keep the equipment in good condition and make all necessary repairs at its expense. No defect or unfitness of the equipment would relieve ADF of the obligation to pay rent under the lease. LNL assigned to ADF any warranty provided by SS. The lease was for a period of fifty months with equal monthly rental payments. Payments were calculated to cover the cost of the machine plus a one-year maintenance contract with SS. The ninety-day warranty on the machine was extended to one year (March 11, 1977), the length of the maintenance contract.
Clearly, the agreement reflects the true intent of the parties and should be given legal effect according thereto. Implied warranty of fitness, not being essential to the contract, could be renounced. Moreover, since it is not expressly or impliedly prohibited by law to waive implied warranties by disclaiming liability for vices and defects in the leased object while retaining the right to collect rentals for the entire term of the lease, it is not against public policy. Accordingly, the court of appeal erred in holding the waiver of warranty invalid.
ADF also contends that its waiver of implied warranty was ineffective because LNL did not bargain with ADF for the waiver, I. e., ADF claims there was a lack of consent to the waiver of implied warranties. ADF bases its argument upon the manner in which the lease was signed. The ADF representatives were late for another appointment when the SS salesman and the LNL representative presented the lease to them. In their hurry, both ADF representatives claim that they signed the lease without reading the terms and conditions listed on the reverse side or noticing the following phrase printed in block letters on the face of the lease:
THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE OF THIS PAGE ARE A PART OF THIS LEASE.
ADF contends that, since they were not made aware of the waiver of warranty clause, it should not be applied to them. This argument is founded upon our holding in Prince v. Paretti Pontiac Co., Inc., 281 *96 So.2d 112 (La.1972), where we held a waiver of implied warranties, to be effective, must be contained in the written document, be clear and unambiguous, and be brought to the purchaser's attention or explained to him. The waiver of warranty in this case was contained in the written lease and was clear and unambiguous. Whether the waiver was brought to ADF's attention presents a closer question.
At the outset, it should be noted that the transaction in question, a lease of an office photocopy machine, was not a "consumer transaction" under federal and state consumer protection laws. See 15 U.S.C.A., § 2301, et seq., and La.R.S. 9:3510, et seq. A consumer transaction is generally defined as one involving the purchase of an item for personal, family or household use. Safeguards protecting consumers must be more stringent than those protecting businessmen competing in the marketplace. See Anderson v. Bohn Ford Co., Inc., 291 So.2d 786 (La.App. 4th Cir. 1973), cert. denied, 294 So.2d 829 (La.1974). It must be presumed that persons engaged in business, as the ADF representatives in this case, one of whom is an attorney, were aware of the contents of the lease agreement which they signed. The phrase in block letters on the face of the lease that called attention to the terms and conditions on the reverse side, combined with the signatures of the ADF representatives, is sufficient evidence to find that the waiver was brought to the lessee's attention; that they did not avail themselves of the opportunity to carefully read the lease which they signed is not a cause to annul the waiver provision. It should be further noted that attached to the lease and dated the same date is a resolution of the board of directors of ADF authorizing Vosbein to execute the lease of the photoopy machine from LNL and a waiver of the landlord's privilege executed by Vosbein. That ADF at all times expected SS to warrant and service the machine is further evidence that ADF was aware of LNL's disclaimer of liability for the machine's operation. Under the circumstances, we find no substance to ADF's contention that the waiver was ineffective.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the trial court in favor of Louisiana National Leasing Corporation and against ADF Service, Inc., David Vosbein and Curtis C. Rogers, Jr., jointly and in solido, for the full sum of $5,731.05 together with interest and costs from date of judicial demand until paid is reinstated and made the judgment of this court.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents for reasons assigned by the Court of Appeal.
DENNIS, J., dissents.
DIXON, Justice (dissenting).
I respectfully dissent.
There is no clear waiver of the implied warranty of quality here. The fact that Louisiana National Leasing "makes no express or implied warranties" does not constitute a waiver by ADF of the legally imposed warranty of quality. The waiver of the implied warranty of quality must be clear and unambiguous. C.C. 2474; Prince v. Paretti Pontiac Co., 281 So.2d 112 (La. 1973).
NOTES
[*] Chief Judge Paul B. Landry, Retired, is sitting by assignment as Associate Justice Ad Hoc in place of Tate, J., upon this case.
[1] 371 So.2d 373 (La.App. 4th Cir. 1979).
[2] 373 So.2d 523 (La.1979).
[3] LNL is a wholly-owned subsidiary of Louisiana National Bank; there is no evidence of any corporate connexity between LNL and SS.