524 So.2d 1239 (1988)
J.L. ANDRUS d/b/a Andrus Equipment Company, Plaintiff-Appellant,
v.
CAJUN INSULATION COMPANY, INC., Defendant-Appellee.
No. 86-581.
Court of Appeal of Louisiana, Third Circuit.
February 9, 1988.
Carolyn Dietzen, Lafayette, for defendant/appellee.
*1240 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Steven Rabalais, Lafayette, for plaintiff/appellant.
Before GUIDRY, FORET, KNOLL and KING, JJ., and CULPEPPER[*], J. Pro Tem.
FORET, Judge.
Plaintiff sought judgment against defendant for the sum of $830.65, the alleged amount due for delinquent rentals under a written lease of movables, together with reasonable attorney's fees, interest and costs. Defendant answered, generally denying the allegations of plaintiff's demand and urging, in addition, that the agreement was executed through error and mistake; the movable equipment leased was defective and did not serve the use for which it was hired; and, the plaintiff-lessor's attempted disclaimer of warranty is null and void. Defendant-lessee also reconvened, asking for judgment declaring the lease agreement null and void.
The trial court, in its written reasons for judgment, accurately summarized the pertinent record evidence as follows:
"David Duhe, General Manager of Cajun, became interested in changing mobile telephone companies in December, 1983 because the air time in his old system had gotten to be too expensive. He contacted several companies offering the installation of mobile telephones, compared prices, and decided upon obtaining a mobile telephone from Roland's Communications, Inc. Two of the primary reasons that David Duhe decided upon obtaining a mobile telephone from Roland's Communications, Inc. were the promises of `unlimited air time' and telephone communications while in New Orleans and Houma.
"On December 14, 1983, David Duhe went to Roland's Communications, Inc. where he was given several documents to sign regarding the installation of the telephone. These documents included the following:
1. True Lease Agreement and Application Number L0024 (P-1);
2. Equipment Acceptance Form (P-2);
3. Service Contract Agreement (P-3);
4. Shared Usage Agreement (D-2).
"David Duhe did not know of the existence of Andrus until the documents were placed in front of him to sign and Andrus admitted never seeing Duhe prior to the trial. Representatives of Roland's Communications, Inc. told Duhe that Andrus was the leasing company for the mobile telephones.
"Andrus had earlier been approached by Roland Grimes, owner of Roland Communications, to buy and lease the mobile phone equipment to Roland's customers. Roland also was part owner of Louisiana Coastal Communications which owned and operated five `specialized mobile radio' (SMR) relay and trunking systems that provided the communications to the mobile phones. Andrus had put together the `package' of forms for the lessee to sign. Roland was to get the customers for Andrus and after the Application (P-1) was signed by the lessee, Andrus would execute the `acceptance', as he did in this case on December 14, 1983.
"From the moment Roland's Communications installed the mobile telephone, Duhe experienced problems with it. He had not driven off of the lot before Roland's Communications had to change out the radio. Within the next several days, Roland's Communications changed the headset, cradle, patchset, and changed the radio out again. Before December 25, 1983, approximately nine days from the first installation of the mobile telephone, Roland's Communications changed out approximately four radios in Duhe's truck. Thereafter, Duhe brought the mobile telephone back in to Roland's Communication for repairs on a regular basis (D-4)."
The trial court rendered judgment dismissing plaintiff's demands concluding, for written reasons assigned, that:

*1241 (a) Defendant-lessee failed to pay stipulated lease rentals totaling the sum of $830.65.
(b) The agreement between plaintiff and defendant was a "true lease" agreement as opposed to a conditional sales agreement.
(c) The leased equipment furnished by plaintiff-lessor to defendant-lessee was defective and did not serve the use for which it was hired.
(d) Plaintiff-lessor's attempted disclaimer of all warranties was of no avail and defendant-lessee was entitled to cancel the lease for breach of the lessor's warranty.
Plaintiff appealed. Defendant answered the appeal, urging error in the trial court's failure to specifically declare the agreement null and void.
The following issues are presented for review by the appeal and answer to the appeal.
1. Did the trial court err in refusing to declare the agreement between the parties null and void?
2. Did the trial court err in refusing to award plaintiff judgment for the rentals sued for and/or for the entire term of the lease considering the disclaimer of warranty provisions of the lease contract?
3. Did the trial court err in refusing to award plaintiff reasonable attorney's fees and costs?

WAS CONTRACT A CONDITIONAL SALE OR A LEASE?
Cajun contends that the agreement between the parties is a conditional sales agreement which is void under our law. In the alternative, appellee contends that the agreement is null for want of consent and by reason of an error as to the principal cause for making the contract.
The trial court concluded that the agreement between the parties, although a financed lease, was a "true lease" subject to the provision of Title IX of Book III of the Civil Code entitled "Of Lease." In reaching this conclusion, the trial court reasoned as follows:
"First, regarding the issue of whether or not the amended lease of movable statute applies to this dispute, we hold that it does. Section 7 of Act 592 is remedial in nature and applies to leases of movables in existence as of the effective date of the act, July 13, 1985. Duhe returned the property on July 24, 1985. Howard Trucking Company, Inc. v. Stassi, 485 So2d 915 (La.1986). Although the lease in question is a financed lease, it has `the same legal effect as true leases for purposes of Louisiana law' and is subject to Title IX of Book III of the Civil Code entitled `Of Lease.' LSA-R.S. 9:3310."
We agree that the contract in question is a lease agreement and not a conditional sales contract. The agreement between the parties contains the usual provisions which are ordinarily contained in leases of movables including the obligation on the part of the lessee to return the movables leased at the expiration of the term of the lease in the same condition as received, with allowance for wear and tear. Specifically, we observe that, although the total payments under the lease are substantially equivalent to the value of the leased property, under the agreement the lessee has neither the right nor the obligation to purchase the leased property at the termination of the lease. Absent such a provision, the agreement can hardly be considered a conditional sale transaction. Further, as noted by the trial court, financed leases, which were previously construed as conditional sales transactions, are now recognized as valid and enforceable in this State by the provisions of the Louisiana Lease of Movables Act, Act 592 of 1985, effective July 13, 1985, La.R.S. 9:3301 et seq., which act, by specific provision, is made retroactive so as to apply to leases in existence as of the effective date of the act. For these reasons, we conclude that the trial court did not err when it refused to declare the agreement null and void.
The trial court determined that the mobile telephone equipment leased to Cajun contained numerous defects such that it did *1242 not serve the use for which it was hired. The record fully supports the trial court's conclusion. Within nine days of the inception of lease, all or some portion of the mobile telephone equipment placed in Duhe's vehicle was changed out four times. Thereafter, although repairs and maintenance were furnished to Cajun, the record makes clear that the frequent necessity for repairs and replacement of parts and the otherwise undependability of the equipment was such as to constitute a clear breach of the lessor's warranty under La.C. C. art. 2692 et seq. Andrus concedes in brief to this Court that the leased equipment was plagued with mechanical problems. However, appellant urges that, despite this fact, he is entitled to recover the accrued and unpaid rentals considering the unambiguous provisions of the lease whereby the lessor disclaims any warranty, express, implied or statutory.
The agreement between the parties contains the following pertinent provision:
"Andrus does not warrant merchantability or fitness for any particular use of equipment and disclaims any other warranty, express, implied or statutory. Lease payment will be due despite dissatisfaction with equipment for any reason."
A like provision appears in a document entitled "Equipment Acceptance Form" which was signed by Cajun simultaneously with the lease agreement.
The trial court determined that, in spite of Cajun's agreement to the stipulation above quoted, Andrus was not entitled to recover the delinquent rental payments.
When this matter was originally submitted to a panel of three, two members of the panel, on preliminary vote, decided to reverse the trial court judgment and to permit recovery by the plaintiffs of the full amount of the provisions of the lease. This writer disagreed, and the matter was resubmitted to a five-judge panel as required by law.
The original majority opinion based its decision purely and simply on the Supreme Court case of Louisiana National Leasing Corp. v. ADF Service, Inc., 377 So.2d 92 (La.1979)[1]
This opinion, in all humility and with full respect for the decisions of the Supreme Court, does not follow LNL-SC. We are comforted somewhat in our deviation from the Supreme Court decision by Supreme Court language found in State v. Anderson, 507 So.2d 212 (La.1987) wherein Justice Dennis infers at page 213 that a court of appeal need not blindly follow a Louisiana Supreme Court decision where there are "three well reasoned dissenting opinions ..." We note that in LNL-SC there were three dissents by regular members of the Court, and that in the four-judge majority, one of the justices was a retired judge sitting pro tempore.
It appears inappropriate for us to indulge in a discussion of the merits of LNL-CA and the demerits of the rationale of LNL-SC. Suffice it to say that we believe that the rationale of LNL-CA should guide the courts of this State concerning the waiver of warranty in leases of both immovable and movable property.[2]
It is apparent that the jurisprudence concerning the waiver of warranty in lease cases is unsettled as is well illustrated by the 4-3 decision of the Supreme Court in LNL-SC. Some of the Supreme Court cases prior to LNL-SC are Tassin v. Slidell Mini Storage, 396 So.2d 1261 (La.1981) where a lessor was held liable for damages sustained by the lessee as a result of water *1243 entering a mini storage warehouse, despite the waiver of warranty; the Court held that the lessor knew or should have known of the defects in construction; in Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732 (1959), waiver of warranty was not given effect because as the Court stated, "We do not think the parties to this contract have contemplated, by this clause, [waiver of warranty] that the lessee should have assumed the risk and the consequences of vice and defects... so radical as to warrant and justify its condemnationa vice of such magnitude as to be utterly destructive of the intents and purposes of the lease and carrying with it as a direct consequence the dissolution of the lease." In Brunies the building which was the subject of the lease had been condemned as being unsafe for occupancy. The lessor sought, nonetheless, to collect the rentals for the remainder of the term. The Supreme Court simply refused to enforce the waiver of warranty.
There are many other cases discussing waiver of warranty in lease agreements, involving both movables and immovables, as well as a multitude of cases involving waiver of warranty in sales of movables. It might be beneficial at this time to briefly discuss doctrinal commentaries. In so doing, we will omit the reproduction of the footnotes which were found in the materials cited.
The doctrinal writings seem to support the holding of LNL-CA. Professor Litvinoff states that a lease is a synallagmatic or bilateral contract by which one party is obliged to give the enjoyment of a thing while the other is obliged to give the agreed price. C.C. art. 2669. In such bilateral contracts, the obligation of one party is the motivating cause of the obligation of the other party. Litvinoff, 7 La.Civil Law TreatiseObligations, Book 2, § 132 (1975). The guarantee imposed by law on the lessor is analogous to the warranty of freedom from vices and defects imposed by C.C. art. 2476 upon the seller, breach of which gives rise to an action for redhibition under C.C. art. 2520. 2 Planiol, Treatise on the Civil Law, § 1786 (La.St.Law Inst. Trans.1959). To the same effect is the treatise by Malaurie and Aynes, Cours de Droit Civil, Les Contrats Speciaux, Edition Cujas, 1986, § 647, to the effect that, like all suppliers of a thing, a lessor owes the warranty against hidden vices. His obligation is analogous to that of the seller.[3] While the warranty against hidden vices can be limited by a clause in the lease agreement, the warranty cannot be completely waived. As concerns the obligations of delivery and maintenance, while the parties are free to apportion financial expenses amongst themselves, they cannot exonerate the lessor of all obligations. Further, such clauses are null if the lessor knows of the hidden vice because he would then be in bad faith, except where he has informed the lessee of the vice.[4]
To the same general effect is language to be found in Traite Pratique de Droit Civil Francais by Planiol and Ripert, 2nd Ed., X, Contrats Civils, § 511 where it is observed that the Cour de Cassation permits parties to restrict the warranty, where it concerns acts of third parties or a vice of the thing. The authors go on to state that the high court's reasoning may be, and this is very debatable, to say the least, that the obligation of the lessor to furnish peaceful enjoyment to the lessee of the thing leased, is not the essence of the contract. On the other hand, the warranty may not be waived in all cases and certainly may not *1244 be waived in cases where it lies within the power of the lessor to remedy the vice.[5]
The lessor owes the enjoyment of peaceful possession to the lessee throughout the duration of the lease ... It is the prolongation of his obligation of delivery [of the thing leased]. This obligation cannot be waived, for it is the essence of the lease.[6]
Considering the above comments and observations, we see then that the rationale of LNL-CA is in line with these scholarly commentaries when it said that:
"... if one party fails in an obligation which is of the essence of the contract, there is no cause for an enforceable obligation on the other party.
. . . . .
The obligation to give a thing free from vices and defects which render the thing unfit for its intended use is of the very essence of a contract of lease.
. . . . .
and the lessor simply cannot be allowed to exact a waiver of the obligation of warranting fitness and guaranteeing freedom from vices and defects while retaining the right to collect rent for the entire 50-month term, even if the machine proves defective within a short period after commencement of the lease."
See LNL-CA, at page 375.
We are also dissuaded to enforce the waiver of warranty in this case by an observation made in a recent law review article wherein the author, in discussing "the supplier's demand for performance despite his own nonperformance" observes, in discussing jurisprudence in supply and nonperformance cases, that:
"In Industralease [Industralease Automated & Scientific Equipment Corp. v. R.M.E. Enterprises, Inc., 58 A.D.2d 482, 396 N.Y.S.2d 427 (1977)], the garbage incinerators delivered to the lessee did not work from the moment of installation, yet the supplier sought to force the lessee to make the contractual payments, while asserting its disclaimer of implied warranties. It is difficult to see how a supplier could assert in good faith [citing La.C.C. art. 1901, which is now art. 1983] its disclaimer of warranty under such conditions.
"It is doubtful however that the delivery of an incinerator that would not incinerate would be considered a satisfactory compliance by the supplier with his express engagements within the meaning of C.C. art. 2046, now 2013. That principle also would seem to provide relief for the lessee in United States Leasing Corp. v. Franklin Plaza Apartments, Inc., 65 Misc.2d 1082, 319 S.2d 531 (Civ. Ct.1971), which signed a lease for the rental of certain equipment, agreed to waive all implied warranties against the lessor, but never received one vital component of the equipment, without which the components delivered were useless. Likewise, the basement waterproofing contractor in Nosse, failed completely to perform his engagements when, as a result of his initial efforts, the consumer's basement leaked more seriously than it previously had. The issue of the contractor's disclaimer of implied and express warranties in such a case in Louisiana need not be reached."[7]
Likewise, in the case at bar, it seems clear to us that the validity of the waiver of the expressed and implied warranties of *1245 the Civil Code articles governing sales and leases need not be reached where the thing sold or leased is totally and admittedly unfit for the purpose intended. In our view, to allow a lessor in such a case to take advantage of a general disclaimer of warranty while, at the same time, requiring the lessee to perform his duty of paying the lease rentals for the entire duration of the lease, is simply against public policy. It seems to us that in such circumstances an error of law must be presumed, such as to invalidate the contract.[8] Additionally, and even if we were to recognize, as did LNL-SC, the validity of the waiver of warranty in this case, which is for all intents and purposes the same as in LNL, then we are in full agreement with the dissent filed by Chief Justice Dixon in LNL-SC in that the fact that lessor makes no express or implied warranties does not constitute a waiver by lessee of the legally imposed warranty of quality.
It is now axiomatic that the waiver of the implied warranty of quality must be clear and unambiguous. C.C. art. 2474; Prince v. Paretti Pontiac Co., 281 So.2d 112 (La. 1973), and its progeny.
Nowhere in the contract involved herein does David Duhe of Cajun Insulation sign anything to the effect that he personally or on behalf of Cajun Insulation waives all warranties, express or implied, and that Cajun Insulation specifically agreed to continue payment of rentals for the entire lease period despite the unfitness of the equipment which was the subject of the lease. The statements of disclaimer of warranty, and intention to collect rentals "no matter what" are simply declarations made by the lessor which were not expressly and without reserve agreed to by the lessee; in fact, there is no evidence in the agreement or at trial that the lessee was even made aware of the disclaimer, until it became obvious that the equipment was unfit and useless for the purpose intended, and Cajun discontinued the lease payments.
For the foregoing reasons, the judgment of the trial court is reversed in part and affirmed in part; the lease agreement involved herein is cancelled, in its entirety; and plaintiff's suit is dismissed with prejudice. Costs at the trial level and on appeal are assessed against plaintiff, J.L. Andrus, d/b/a Andrus Equipment Company.
REVERSED IN PART AND AFFIRMED IN PART.
KING, J., concurs and assigns written reasons.
GUIDRY, J., dissents and assigns written reasons.
CULPEPPER, J. Pro Tem., dissents for the reasons assigned by GUIDRY.
KING, Judge, concurring.
I concur only in the result reached but for different reasons.
I agree with Judges Guidry and Culpepper that the Supreme Court decision in Louisiana National Leasing Corporation v. ADF Service, Inc., et al, 377 So.2d 92 (La.1979) is decisive that an implied warranty in a contract can be waived, as not being essential to the contract, and that such waiver of warranty is not against public policy. See also Guillory v. Morein Motor Company, Inc., 322 So.2d 375 (La. App. 3 Cir. 1975). I further agree that such pronouncement of law by the Louisiana Supreme Court must be followed by an intermediate court of appeal and can only be overruled by the Supreme Court itself.
It is well established that for the waiver of implied warranty in a contract of sale or lease to be effective that it must be (1) written in clear and unambiguous terms, (2) the waiver must be contained in the written contract, and (3) the waiver either must be brought to the attention of the buyer or lessee or explained to him. Cf. Louisiana National Leasing Corporation v. ADF Service, Inc., et al, supra, (Dissenting Opinion of Chief Justice Dixon); Theriot v. Commercial Union Ins. Co., 478 So.2d 741 (La.App. 3 Cir.1985) and cases cited therein; Thibodeaux v. Meaux's Auto Sales, Inc., 364 So.2d 1370 (La.App. 3 Cir.1978); Hendricks v. Horseless Carriage *1246 Inc., 332 So.2d 892 (La.App. 2 Cir. 1976); Prince v. Paretti Pontine Co., 281 So.2d 112 (La.1973). Louisiana cases are generally in accord and constitute a recognition that where limitations of warranty are not the result of actual bargaining that they should not be given literal effect. Wolfe v. Henderson Ford, Inc., 277 So.2d 215 (La.App. 3 Cir.1973); The Work of the Louisiana Appellate Courts for the 1968-1969 Term-Particular Contracts, 30 La.L. Rev. 171, 214. An exclusion or waiver of warranty by which parties take themselves out of the coverage of specific or general law and make a law unto themselves must be strictly construed and our courts have been reluctant to give effect to stipulated waivers of the warranty implied by law. Wolfe v. Henderson Ford, Inc., supra; Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App. 4 Cir. 1962).
I agree with Judges Foret and Knoll, who disagree with Judges Guidry and Culpepper, that just because David Duhe, the General Manager and an employee of the defendant corporation, signed the "True Lease Agreement" and "Equipment Acceptance Form" containing the lessor's warranty waiver language that this did not constitute an express waiver of warranty in clear and unambiguous terms by the lessee, the defendant corporation, Cajun Insulation Company, Inc. (hereinafter Cajun). The warranty waiver language in the documents stated that "Andrus does not warrant... and disclaims any other warranty, express, implied or statutory." The implied warranty given by law runs in favor of the buyer or lessee, who must expressly renounce the warranty in clear and unambiguous terms, and not in favor of the seller or the lessor whose renunciation of the warranty, even if in clear and unambiguous terms, is ineffective. Nowhere in the documents in evidence does it clearly and unambiguously state that the lessee, Cajun, renounces the warranty. Even if, as suggested by Judges Guidry and Culpepper, the signing of the documents signified agreement with its terms, it is my opinion that this would only be agreement and recognition of what the lessor, Andrus, had stated in the documents, which was only that Andrus had waived the warranty. The evidence is undisputed that lessor's warranty waiver language was not brought to the attention of the lessee's employee or explained to him. The evidence is clear that the printed documents were drafted and furnished by Andrus who was the lessor. The law is well settled that ambiguities in a document must be construed against the party who drafted and furnished the document. The documents could have easily stated that lessee waived the warranty but they did not. It is apparent that the lessee's waiver could not be brought to the attention of or explained to the lessee, Cajun, through its employee who signed the documents, if the documents nowhere clearly and unambiguously state that the lessee, Cajun, expressly renounced the warranty implied by law in its favor. While it is true that the lessee's employee read one of the documents containing the lessor's waiver of warranty language, and is presumed to know its contents, this does not, in my opinion, meet the requirements of law that there be a waiver of warranty in clear and unambiguous terms by the lessee in whose favor the warranty runs. For these reasons I believe that the waiver of warranty by lessee, Cajun, was not effective as none of the three requirements of law for there to be a valid waiver of warranty have been met.
However, even if this is not so, it is clear that a corporation can only act through its duly authorized employees or agents who must have express corporate authorization for their actions evidenced by a corporate resolution of the board of directors. Cf. Dunham v. Anderson-Dunham, Inc., 466 So.2d 1317 (La.App. 1 Cir.1985), writ den., 472 So.2d 29 (La.1985) and authorities cited therein.
Failure to prove express corporate authorization for the actions of an employee or agent, as a matter of evidentiary proof, results in the invalidity of contracts executed for the corporation. See, e.g., Marsh Inv. Corp. v. Longford, 490 F.Supp. 1320 (U.S.Dist.Ct.E.D.La.1980); Arcemont v. Voisin, 468 So.2d 785 (La.App. 1 Cir.1985), *1247 writ den., 474 So.2d 947 (La.1986); Margolis v. Allen Mortgage & Loan Corporation, 268 So.2d 714 (La.App. 4 Cir.1972).
The record in this case is barren of any evidentiary proof that David Duhe, as the General Manager and an employee of the corporate defendant, Cajun, had the express authorization of the corporate defendant and lessee to waive the implied warranty of quality in the lease contract between Andrus and Cajun. For this reason I find that the trial judge was not clearly wrong or manifestly in error in his factual finding that the attempted disclaimer of all warranties by the plaintiff-lessor, Andrus, was of no avail. It is also for this reason that I agree that the lease between the parties should be cancelled for clear breach of the lessor's implied warranty of quality in the leased property.
For these reasons I respectfully concur only in the result reached by Judges FORET and KNOLL in affirming in part and reversing in part the decision of the trial court.
GUIDRY, Judge, dissenting.
In my view, the Louisiana Supreme Court's decision in Louisiana National Leasing Corporation v. ADF Service, Inc., 377 So.2d 92 (La.1979), is decisive of the matter presented and dictates a result different from that reached by the majority. A factual situation virtually identical to the instant case was present in Louisiana National Leasing Corporation, supra. In that case, ADF leased a photocopy machine from LNL. The lease excluded all warranties on the part of the lessor. The copy machine was beset with mechanical problems which were never corrected. ADF returned the machine to LNL and refused to make further payments under the lease. LNL filed suit. The trial court granted judgment in favor of LNL however, the court of appeal reversed concluding that the lessor's guarantee against vices and defects which may prevent the thing from being used for its intended purpose (La.C. C. art. 2695) is of the very essence of the contract of lease and could not be validly waived. 371 So.2d 373 (La.App. 4th Cir. 1979). The Louisiana Supreme Court reversed holding, in pertinent part, as follows:
"LNL occupies the position of a lessor of a movable. La.Civil Code art. 2676. Article 2674 provides that a lease of a thing is a contract by which one party grants the enjoyment of a thing for a certain time for a stipulated price which the other party must pay. The lessor guarantees the lessee against all vices and defects which may prevent the thing from being used. Id. art. 2695. Article 1764 states that implied warranties are not essential elements of contracts, but may be waived without destroying the character or effect of the contract:
All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:
. . . . .
(2) Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; of this nature is warranty, which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect.
Implied warranties arise by operation of law in every contract of lease. La.Civil Code arts. 2693-95. However, the lessee may as a condition of the contract of lease dispense with the implied warranties. Klein v. Young, 163 La. 59, 111 So. 495 (1927).
Legal agreements have the effect of law upon the parties and courts are bound to give legal effect to all such contracts according to the true intent of the parties. La.Civil Code art. 1945. Individuals cannot, by their conventions, derogate from the force of laws made for *1248 the preservation of public good or good morals; however, in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good. Id. art. 11.
. . . .
Clearly, the agreement reflects the true intent of the parties and should be given legal effect according thereto. Implied warranty of fitness, not being essential to the contract, could be renounced. Moreover, since it is not expressly or impliedly prohibited by law to waive implied warranties by disclaiming liability for vices and defects in the leased object while retaining the right to collect rentals for the entire term of the lease, it is not against public policy. Accordingly, the court of appeal erred in holding the waiver of warranty invalid."
My research discloses that the cited case is the latest pronouncement by our Supreme Court on the specific issue presented. Although I may agree in principle with the views expressed and the result reached by the opinion author, I believe that, as an intermediate court of appeal, we are obligated to apply the law as pronounced by our Supreme Court and, in this regard, it is immaterial that the composition of the Supreme Court is different now then it was when Louisiana National Leasing Corporation was decided. The overruling of previous legal principles followed and approved by the Louisiana Supreme Court lies solely within the authority of that court. Holland v. Buckley, 287 So.2d 599 (La.App. 2d Cir.1973), writ granted, 288 So.2d 639 (La.1974), reversed, 305 So.2d 113 (La.1974), decision after remand, 312 So.2d 356 (La.App. 2d Cir.1975).
The lease agreement between the parties in the instant case contains the following pertinent provision which appears in bold print on the front page of the document:
"Andrus does not warrant merchantability or fitness for any particular use of equipment and disclaims any other warranty, express, implied or statutory. Lease payment will be due despite dissatisfaction with equipment for any reason."
A virtually identically waiver of warranty provision appears in a document entitled "Equipment Acceptance Form" which was signed by Cajun simultaneously with the lease agreement. Cajun was represented in the lease negotiations and in the confection of the lease agreement by David Duhe, its General Manager, an astute businessman. Duhe acknowledged that, although he did not read the lease agreement before signing, he did read the equipment acceptance document before he signed same. These circumstances, in my opinion, suffice to satisfy the requirement that a limitation of warranty must be brought to the attention of the buyer. Applicable, under the circumstances, is the well settled principle that a party who signs a written document is presumed to know its contents and cannot avoid the obligations which may be imposed upon him by urging that he did not read the document or understand its provisions. Jackson v. Lambert, 492 So.2d 498 (La.App. 1st Cir.1986), writ denied, 496 So.2d 1045 and 496 So.2d 1046 (La.1986).
For these reasons, I respectfully dissent.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] For brevity's sake, the Louisiana National Leasing Corporation case at the Supreme Court level will be referred to as LNL-SC and the Fourth Circuit Court of Appeal decision in the case, which can be found at 371 So.2d 373, will be referred to as LNL-CA.
[2] We note that Section 7 of Act 592 of 1985 of the Louisiana Legislature, which has been incorporated into our statutes at R.S. 9:3301 et seq., while adopting comprehensive provisions of law regarding the leasing of movables, nowhere therein mentions waiver of the implied warranties of fitness set forth in the section of the Civil Code on sales and leases. On the contrary, § 3309 states that:

"Except as specifically provided in this Chapter, true leases are subject to Title IX of Book III of the Civil Code entitled `Of Lease.'"
[3] "Comme tous les fournisseurs d'une chose, le bailleur doit la garantie des vices caches ... Son obligation est analogue a celle du vendeur: seuls sont garantis les vices non apparents et inconnus due preneur, meme s'ils etaient inconnus egalement du bailleur. Celui-ci s'exonere en prouvant que le dommage provient d'une cause etrangere ou d'un cas de force majeure.
[4] "... la garantie des vices caches peut etre limitee par une clause du bail, sans pouvoir neanmoins etre completement exclue. Comme a l'egard des obligations de delivrance et d'entretien, les parties sont libres de repartir elles-memes leurs charges financieres, sans pouvoir exonerer le bailleur de toute obligation. En outre, ces clauses sont nulles si le bailleur connaissait le vice cache car il serait alors de mauvaise foi, sauf s'il avait informe le locataire car le vice serait alors apparent."
[5] "La Cour de cassation permet aux parties de restreindre la garantie, en ce qui concerne du moins le fait des tiers ou le vice de la chose. Elle en donne ce motif, peut-etre, a vrai dire, assez discutable, que l'obligation pour le bailleur de faire jouir paisiblement le preneur de la chose louee n'est pas de l'essence du contrat. Elle ne permet pas, en revanche, que la garantie soit supprimee dans tous les cas, et il a egalement ete decide que la clause d'exoneration des vices ne jouait pas lorsqu'il s'agissait d'un vice auquel le bailleur aurait pu porter remede."
[6] "Le bailleur doit d'abord faire jouir paisiblement le preneur pendant toute la duree du bail... C'est le prolongement de son obligation de delivrance. Cette obligation ne peut etre ecartee, car elle est de l'essence du bail."

(NOTE: The translation of the French text is by the author of this opinion and may be less than perfect.)
[7] Hersbergen, Unconscionability: The Approach of the Louisiana Civil Code, 43 La.L.R. 1315 (July, 1983), at page 1353.
[8] Hersbergen, supra, page 1333.